**HUNTON ANDREWS KURTH LLP**
Ian Roberts (Texas Bar No. 24056217)
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: 214.979.3000
iroberts@hunton.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Travis Property Owner, LLC, | ) | Case No. 26-90220-MXM-11 |
| Debtor.[1] | ) | |

**Emergency relief has been requested. Relief is requested not later than 1:30 p.m. (CT) on November 12, 2026, which is the currently noticed date of the final hearing on the Debtor's first day motions.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**EMERGENCY MOTION OF ACORE CAPITAL MORTGAGE, LP**
**TO DISMISS DEBTOR'S CHAPTER 11 CASE**

ACORE Capital Mortgage, LP ("***ACORE***"), as administrative agent of the secured lenders for Travis Property Owner, LLC (the "***Debtor***"), files this motion (this "***Motion***") seeking entry of an order (the "***Proposed Order***"), substantially in the form attached hereto as **Exhibit A**, dismissing the Debtor's chapter 11 case (the "***Chapter 11 Case***"). In support, ACORE respectfully

[1] The last four digits of the Debtor's federal identification number are 4091. The Debtor's address is 42809 Souther Drive, Centreville, VA 20120.

submits the *Declaration of David Dancer in Support of Emergency Motion of ACORE Capital Mortgage, LP to Dismiss Debtor's Chapter 11 Case* (the "***Dancer Declaration***"), attached hereto as **Exhibit B**, and the exhibits annexed thereto, and respectfully represents as follows:

## PRELIMINARY STATEMENT

1. This Chapter 11 Case was filed without the requisite authority under the Debtor's organizational documents, on the day of a public foreclosure sale, following the Debtor's unsuccessful litigation in state court to block foreclosure. The Debtor is a single asset real estate company with no employees, dangerously dwindling cash flow, almost no unsecured debt relative to what it owes ACORE, and no prospects for a sale or refinancing. This is a two-party dispute that should be dismissed as a bad faith filing under 11 U.S.C. § 1112(b).

2. But separate and apart from the issue of bad faith, the filing was an *ultra vires* act that requires dismissal. There is no indication that the Debtor's independent manager—a professional independent director with no economic or other ties to ACORE or the Debtor's equity owners—consented in writing to the filing of the petition as required by the Debtor's organizational documents. The unauthorized filing cannot be ratified postpetition and the Chapter 11 Case must be dismissed.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Northern District of Texas (the "***Court***") has jurisdiction here under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief requested herein are sections 105(a), 349(a), and 1112(b) of title 11 of the United States Code (the "***Bankruptcy Code***"), rules 2002 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), the Local

Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "***Local Bankruptcy Rules***"), and the Procedures for Complex Cases in the Northern District of Texas (the "***Complex Case Procedures***").

## BACKGROUND

5. The Debtor owns an undivided 75.86% tenant-in-common interest in a multifamily apartment community located at 900 Gordon Heights Lane, Frisco, Denton County, Texas (the "***Property***").[2] The Debtor has no business apart from owning the Property, derives substantially all of its income from the same, and, accordingly, self-designated itself a single asset real estate debtor for purposes of the Bankruptcy Code. *See* Petition, at § 7. The Debtor has no employees and filed nothing with its petition [Docket No. 1] (the "***Petition***") and first day motions indicating the existence of a viable process to sell or refinance the Property.[3]

6. ACORE Capital is a private credit lender and asset manager in the commercial real estate industry. ACORE is an affiliate of ACORE Capital.

7. On June 10, 2022, Delphi CRE Funding LLC, AC IV CA Mortgage LLC and the other Lenders from time to time party thereto (the "***Lenders***") entered into a Loan Agreement (as amended, modified, and supplemented from time to time, the "***Loan Agreement***"), a copy of which is attached to the Dancer Declaration as Exhibit 1, with the TIC Owners, as the borrowers, and ACORE as Administrative Agent for the Lenders, pursuant to which the Lenders made a mortgage loan to the TIC Owners in the original principal amount of up to $73,407,750.00 (the "***Loan***"). The TIC Owners are jointly and severally liable under the Loan Agreement. The Loan is evidenced

---

[2] The remaining undivided 24.14% tenant-in-common interest in the Property is owned by non-Debtor Verso Sub I, LLC ("***Verso***," and together with the Debtor, the "***TIC Owners***").

[3] Despite the initial budget attached to the Debtor's cash collateral motion having a line for "Payroll (on site)," its counsel confirmed on the record at the first day hearing on October 13, 2026, that it has no employees.

by Promissory Notes A1-1, A1-2, B1-1, and B1-2 (collectively, the "***Promissory Notes***") and is secured by, among other things, a Deed of Trust, a copy of which is attached to the Dancer Declaration as Exhibit 2, Assignment of Leases and Rents, a copy of which is attached to the Dancer Declaration as Exhibit 3, and Security Agreement and Fixture Filing, which is incorporated in the Deed of Trust (collectively with the Loan Agreement and the Promissory Notes, the "***Loan Documents***") encumbering the Property. As of the Petition Date, the Debtor was indebted under the Loan Documents in the total amount of $74,734,511.36.

8. Under the Loan Documents, ACORE holds lien and security interest in substantially all assets of the Debtor (collectively, the "***Collateral***").[4] On June 13, 2022, ACORE filed and caused to be recorded the Deed of Trust, Assignment of Leases and Rents, and other applicable Loan Documents in the real property records of Denton County, and on June 14, 2022, caused the UCC-1 financing statements, a copy of which is attached to the Dancer Declaration as Exhibit 4, to be filed with Delaware Secretary of State.

9. The Loan has been in payment default since April 2026. The Debtor also committed and failed to cure certain covenant defaults, including, but not limited to, its obligation to maintain a professional manager of the Property on terms and conditions acceptable to ACORE. *See* Loan Agreement, at §§ 6.1.9, 6.2.1. Certain formal notices of default sent by ACORE to the Debtor prior to the Petition Date, and evidencing these facts, are attached as Exhibit 5 and Exhibit 6 to the Dancer Declaration. For six months, ACORE tried to work with the Debtor in its efforts to cure the various defaults, to no avail.

[4] The Collateral includes the land and improvements comprising the Property, the fixtures and equipment located thereon, the leases and rents of the Property, (including, but not limited to, security deposits), the TIC Owners' accounts and general intangibles, the clearing account, cash management account, and reserve accounts maintained under the Loan Agreement and all sums on deposit therein, insurance proceeds, and the proceeds of all of the foregoing.

10. On September 14, 2026, ACORE noticed a public foreclosure sale of the Property (the "***Foreclosure Sale***") for 10:00 a.m. (prevailing Central Time) on October 6, 2026. *See* Dancer Declaration at Exhibit 6 (the "***September Notice***").

11. The Debtor then sought and failed to obtain injunctive relief in Texas state court to prevent the foreclosure. More specifically, on September 27, 2026, the Debtor filed the *Defendant's Application for Temporary Restraining Order and Temporary Injunction* (the "***TRO Motion***"), Cause No. 26-6513-431, in the District Court for Denton County, Texas, 431st Judicial District (the "***Texas State Court***") seeking to halt the Foreclosure Sale. On September 30, 2026, the Texas State Court entered an order denying the TRO Motion (the "***TRO Order***"). The TRO Motion and TRO Order are attached to the Dancer Declaration as Exhibit 7 and Exhibit 8, respectively.

12. One week later, on October 6, 2026 (the "***Petition Date***")—the same day the Foreclosure Sale was to occur—the Debtor filed its voluntary Petition for relief under chapter 11 of the Bankruptcy Code with the Court. Mr. Ravikiran Thummalapenta, the Debtor's first day declarant, executed the voluntary Petition. No formal resolutions or written consents were included with the Petition. Mr. Thummalapenta declared, under penalty of perjury, that he was authorized to file the Petition on behalf of the Debtor. *See* Petition, at § 17.

13. The Debtor is a Delaware limited liability company. Its organizational documents[5] impose certain special purpose entity limitations for so long as the Loan is outstanding. *See* LLC Agreement, at §§ 9(d), 10. Among other things, these limitations require the written consent of the Debtor's independent manager (the "***Independent Manager***") in order for the Debtor to

[5] The Limited Liability Company Agreement of Travis Property Owner, LLC, dated June 10, 2022 (the "***LLC Agreement***"), is attached to the Dancer Declaration as Exhibit 9.

authorize certain material actions, including the voluntary commencement of a bankruptcy proceeding. *See* LLC Agreement, at § 9(d)(iii); *see id.*, Schedule A (definitions), at A-5.

14. On information and belief, the Debtor sought and failed to obtain the consent of its Independent Manager in connection with the execution and filing of the Petition.

**ARGUMENT**

**I. THE CHAPTER 11 CASE SHOULD BE DISMISSED FOR "CAUSE" PURSUANT TO 11 U.S.C. § 1112(B).**

15. Section 1112(b) of the Bankruptcy Code provides that the Court "*shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate," upon a showing of "cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b) (emphasis added).

16. Here, there is "cause" to dismiss the Chapter 11 Case because (a) the Debtor filed the Petition without the requisite authority under its organizational documents, and (b) the Chapter 11 Case was otherwise filed in bad faith.

**A. The Petition Was Not Authorized Under the LLC Agreement.**

17. A non-individual chapter 11 debtor must be duly authorized to sign a voluntary petition and commence a case under title 11. To do otherwise is an *ultra vires* act. Official Form 201 of the chapter 11 petition thus requires those executing to represent that they are authorized to sign it.

18. Whether a debtor has authority to sign a petition is a function of state law and the internal affairs doctrine; if the debtor lacked authority to file the petition, its case must be dismissed. As explained by the Fifth Circuit:

> In absence of federal incorporation, that authority [to commence a bankruptcy case] finds its source in local law. State law thus

> determines who has the authority to file a voluntary petition on behalf of the corporation. If the petitioners lack authorization under state law, the bankruptcy court has no alternative but to dismiss the petition. It is not enough that those who seek to speak for the corporation may have the right to obtain that authority. Rather, they must have it at the time of filing.

*See In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 206–07 (5th Cir. 2018), *as revised* (June 14, 2018) (citations and internal quotations omitted); *In re Whittaker Clark & Daniels Inc.*, 176 F.4th 241, 255–59 (3d Cir. 2026) (applying the internal affairs doctrine in determining whether a petition was authorized); *see also Chitex Commc'n, Inc. v. Kramer*, 168 B.R. 587, 589 (S.D. Tex. 1994) (finding that an individual who authorized the chapter 11 filing of a corporation that he shared ownership of as a marital asset with his wife "had no authority with which to file a Chapter 11 petition on behalf of [the corporation]" and that "his bankruptcy filing constituted bad faith since it was done on the eve of [the corporation's] foreclosure in an effort to evade the state judgment"). This has long been the law. *See Price v. Gurney*, 324 U.S. 100, 106 (1945) ("[I]f the court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition.").

19. Here, the Debtor's organizational documents required the Independent Manager to consent to any bankruptcy filing. Section 9(d)(iii) of the LLC Agreement provides as follows:

> Notwithstanding any other provision of this Agreement or any other document governing the formation, management or operation of the Company and notwithstanding any provision of law that otherwise so empowers the Company, the Member, or any Officer or other Person, so long as the Obligations are outstanding, neither the Member nor any Officer nor any other Person shall be authorized or empowered on behalf of the Company to, nor shall they permit the Company to, and the Company shall not, ***without the prior unanimous written consent of the Member and the Independent Manager***, take any Material Action, provided, however, that, so long as the Obligation is outstanding, the Member may not vote on or authorize the taking of any Material Action, unless there is at least

> one (1) Independent Manager then serving in such capacity and such Independent Manager has consented to such action in writing.

LLC Agreement, at § 9(d)(iii) (emphasis added). Under the LLC Agreement, a "Material Action," among other things, means:

> ". . . to institute proceedings to have the Company be adjudicated bankrupt or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against the Company or file a voluntary bankruptcy petition or any other petition seeking, or consent to, reorganization or relief with respect to the Company under any applicable federal or state law relating to bankruptcy."

*Id.*, Schedule A (definitions), at A-5. The LLC Agreement further (a) defines and specifies the requirements of the Independent Manager, *see id.*, Schedule A (definitions), at A-3, A-4; (b) limits the ability to amend any provisions concerning the Independent Manager requirements, *see id.*, at § 9(d)(ii); (c) specifies the standard that should guide the Independent Manager's actions and vote regarding Material Actions in accordance with Delaware law, *see id.*, at § 10; and (d) meticulously qualifies the grant and conferral of power and management duties to all others by the special purpose limitations of Section 9(d) of the LLC Agreement. *See id.*, at §§ 8, 9.

20. The Debtor's current Independent Manger is Ms. Jessica L. M. Woodward, who replaced the Debtor's original Independent Manager, Ms. Miranda Brewer. Ms. Woodward is an employee of CSC Global, a provider of business administration, compliance, and independent director services. Attached to the Dancer Declaration as <u>Exhibit 10</u> is a letter from CSC whereby Ms. Woodward acceded to the Debtor's Independent Manager position. As required by the LLC Agreement, Ms. Woodward is independent from ACORE and decides on whether to authorize a Material Action based solely on what is in the interest of the Debtor. *See* LLC Agreement, at § 10.

21. As noted above, there were no resolutions, written consents, or other documents filed with the Petition indicating that the Debtor's Independent Manager consented in writing to the filing of the Petition. On information and belief, the Debtor sought to obtain such consent prior

to the Petition Date, was unsuccessful, and filed the Petition anyways on the morning of the Foreclosure Sale. Any effort to obtain such approval now is futile under applicable law. *See In re Cinch Wireline Servs., LLC*, 2025 WL 848199, at *19–21 (Bankr. W.D. Tex. Mar. 18, 2025) (ruling that ratification cannot cure the jurisdictional defect of an unauthorized bankruptcy filing, even where the lawful members of the LLC formally and unanimously sought to ratify the bankruptcy filing after the fact). Absent evidence from the Debtor that the Independent Manger authorized the filing before the Petition Date, the Chapter 11 Case must be dismissed.

**B. The Chapter 11 Case Was Otherwise Filed in Bad Faith.**

22. It is well-settled in the Fifth Circuit and elsewhere that a bankruptcy case filed in bad faith constitutes "cause" for dismissal of the case under section 1112(b) of the Bankruptcy Code. *See Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) (citations omitted); *see also In re 1701 Com., LLC*, 477 B.R. 652, 657 (Bankr. N.D. Tex. 2012) (noting that "courts in this and other circuits have long recognized that bad faith constitutes 'cause' for purposes of dismissal under section 1112(b) or relief from stay under section 362(d)(1)") (citations omitted).

23. Bad faith findings "have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum." *In re Nat'l Rifle Ass'n of Am.*, 628 B.R. 262, 280 (Bankr. N.D. Tex. 2021) (quoting *Matter of Little Creek*, 779 F.2d at 1072). Thus, "[v]arious Circuit-level courts have established factors to assist lower courts in their analysis of whether a bankruptcy petition was filed in good faith." *In re Trust*, 526 B.R. 668, 681 (Bankr. N.D. Tex. 2015) (citations omitted). Among many other non-exclusive factors that are indicative of a bad faith filing, Texas bankruptcy courts have identified the following:

a. the debtor has one asset, such as either undeveloped or developed real property, encumbered by secured creditors' liens;

b. debtor has engaged in improper prepetition conduct;

c. the debtor's property has been posted, or is about to be posted, for foreclosure, and the debtor has tried unsuccessfully to prevent this foreclosure in state court;

d. the filing of bankruptcy enabled the debtor to evade court orders;

e. the debtor employs few or zero employees other than its principals;

f. there is little or no cash flow or source of income to sustain a reorganization or make adequate protection payments;

g. there are few if any unsecured creditors and their claims are relatively small; and

h. the case is a two-party dispute between the debtor and a single creditor.

*See In re 1701 Com., LLC*, 477 B.R. at 657–58 (citations omitted); *see also In re Traxcell Techs., LLC*, 657 B.R. 453, 459 (Bankr. W.D. Tex. 2024). However, a finding of bad faith does not require the presence of all of these factors. *See Matter of Little Creek*, 779 F.2d at 1072–73. Instead, "[a]s explained by the Fifth Circuit . . . this Court's decision . . . will depend largely on its on-the-spot evaluation of the Debtor[s'] financial condition, [their] motives, and the local financial realities of [these cases], and not on any single factor." *In re Trust*, 526 B.R. at 681 (citation omitted).

24. Additionally, ACORE need only make a *prima facie* showing that the Debtor did not file the Chapter 11 Case in good faith. *See In re Nat'l Rifle Ass'n of Am.*, 628 B.R. at 270 ("After the movant satisfies the initial burden of making a *prima facie* showing of a lack of good faith in filing, the burden shifts to the debtor to demonstrate good faith.") (citations omitted).

25. The Chapter 11 Case has all the hallmarks of a bad faith filing:

- ***SARE***: The Debtor is a single asset real estate company. *See* Petition, at § 7. The Property and rents are fully encumbered by the liens of ACORE.
- ***Eve of foreclosure***: The Petition was filed on the day the Foreclosure Sale was to occur. The filing came following evasive and unsuccessful efforts by the Debtor to block the foreclosure in state court. *See generally* TRO Order; September Notice.

- ***Improper conduct***: As explained above, the Petition was filed without the consent of the Independent Manger, in violation of the Debtor's organizational documents, notwithstanding the representations of Mr. Thummapalenta in the Petition. *See* Petition, at § 17.

- ***No employees or professional property manager***: The Debtor has no employees and its principals are attempting to manage the Property themselves in violation of the Loan Documents.[6]

- ***The Chapter 11 Case is a two-party dispute***: The bankruptcy filing was intended to block foreclosure following litigation with ACORE in the Texas State Court whereby the Debtor unsuccessfully tried to block the Foreclosure Sale. TRO Motion, at 14–15. ACORE's secured claim is in excess of $75 million, and the unsecured claims scheduled by the Debtor in the Petition are barely 1% of that amount.[7] There is nothing to suggest the Chapter 11 Case has the type of multi-party dynamics that chapter 11 is designed to address. "Two-party disputes such as this simply have no place in bankruptcy." *In re Anderson Oaks (Phase I) Ltd. Pship*, 77 B.R. 108, 112 (Bankr. W.D. Tex. 1987) (collecting cases).

- ***Lack of adequate cash flow or equity in the property***: Under the initial budget attached to the *Debtor's Motion for Order Authorizing the Interim and Final Use of Cash Collateral* [Docket No. 9], the Debtor projected an ending cash balance of just $232,000 at the conclusion of the 13-week period, which presumably includes the security deposits of tenants. The lion's share of adequate protection it proposes to pay is for the purposes of funding its *ad valorem* property taxes coming due in January 2027, and thus not actual adequate protection payments to ACORE. Interest, costs and fees owed to ACORE continue to accrue under the Loan Documents. And according to a recent appraisal,[8] the Property is worth approximately $64,400,000.00, at best. There is no equity in the Property as the indebtedness under the Loan is approximately $75 million and ACORE's lien fully encumbers the Property and rents. Consequently there would be zero distributions to unsecured creditors.

26. Badges of bad faith abound. Nothing has been offered by the Debtor to suggest that that the Chapter 11 Case has any purpose other than to allow equity to continue to deny the

---

[6] *See Declaration of Ravikiran Thummalapenta in Support of Defendants' Application for Temporary Restraining Order and Temporary Injunction*, at ¶ 12, a copy of which is attached to the TRO Motion ("[The original property manger] RPM resigned at the end of May 2026, and the [TIC Owners'] in-house platform has since operated the Property."); *see also* Loan Agreement, at §§ 6.1.9, 6.2.1.

[7] The Debtor has not filed its schedules, but the total amount of the top 20 creditors listed in the petition packet is $761,365.17.

[8] ACORE intends to offer this appraisal report at the hearing on this Motion and share it with the Debtor and its counsel at least five calendar days prior to the hearing held on this Motion, if any.

economic reality of their situation. The bankruptcy was filed, knowingly without proper authority, as a litigation tactic in a two-party dispute to delay the enforcement of ACORE's property rights. "Cause" exists to dismiss the Chapter 11 Case for bad faith under section 1112(b) of the Bankruptcy Code.

## II. DISMISSAL SHOULD BE WITH PREJUDICE.

27. A bankruptcy court has the inherent power under sections 105(a) and 349(a) of the Bankruptcy Code to dismiss a debtor's chapter 11 case with prejudice, and proscribe subsequent bankruptcy filings, where the debtor has commenced its bankruptcy case for an improper purpose and in bad faith. *See* 11 U.S.C. §§ 105(a), 349(a); *Matter of Elmwood Dev. Co.*, 964 F.2d 508, 511–12 (5th Cir. 1992) (establishing that filing a chapter 11 case for an improper or illegitimate purpose constitutes bad faith and "cause" for dismissal under § 1112(b), thereby providing the substantive predicate for courts to impose prejudicial remedies under §§ 105(a) and 349(a)).

28. The Debtor's bad faith filing on the day of the Foreclosure Sale warrants dismissal, with prejudice to the right to file again for at least 90 days, to ensure there is no further interference with foreclosure and the orderly transition of the Property to a well-capitalized owner and professional property manager.

29. ACORE and its affiliates, successors, and assigns retain all rights, claims, causes of action, and defenses relating to these matters, including without limitation the commencement of the Chapter 11 Case, the Loan Documents, the Property, and its rights and claims against the Debtor's affiliates and ultimate owners.

## EMERGENCY CONSIDERATION

30. In accordance with the Local Bankruptcy Rules and Complex Case Procedures, ACORE requests emergency consideration of this Motion. ACORE submits that emergency relief for this Motion to be heard at the second day hearing, currently scheduled for November 12, 2026,

at 1:30 p.m. (prevailing Central Time) (the "***Second Day Hearing***"), is necessary because, as discussed in further detail in this Motion, the Chapter 11 Case was filed without the appropriate authority, and accordingly, scheduling this Motion for the Second Day Hearing will be in the interest of judicial economy for all parties in interest. Therefore, ACORE believes that emergency consideration is necessary and respectfully requests that this Motion be heard on an emergency basis at the Second Day Hearing.

**NOTICE**

31. Notice of this Motion will be given to the parties on the Debtor's Master Service List and all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. ACORE submits that, under the circumstances, no other or further notice is required.

32. A copy of this Motion, the Dancer Declaration, and all other documents filed in this Chapter 11 Case are available on the Court's website, at www.txs.uscourts.gov.

WHEREFORE, ACORE respectfully requests that the Court enter the Proposed Order dismissing the Chapter 11 Case for "cause." ACORE further requests that the Court grant such other further relief as the Court deems just and proper.

Dated: October 20, 2026
Dallas, Texas

Respectfully submitted,

*/s/ Ian E. Roberts*

**HUNTON ANDREWS KURTH LLP**
Ian E. Roberts (Texas Bar No. 24056217)
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
iroberts@hunton.com

*Counsel to ACORE Capital Mortgage, LP*

**CERTIFICATE OF CONFERENCE**

I hereby certify that October 19, 2026, I conferred with proposed counsel for the Debtor, Robert T. DeMarco, via e-mail, regarding the relief requested in this Motion. Mr. DeMarco indicated that the Debtor opposes the relief requested in this Motion.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2026, a true and correct copy of the foregoing document was served by (a) the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas upon those parties registered to receive such electronic notifications in the Chapter 11 Case, and (b) first-class mail to those parties appearing on the Master Service List filed on October 16, 2026, in the Chapter 11 Case, and the parties and addresses listed below.

| | | |
|---|---|---|
| Travis Property Owner LLC<br>42809 Souther Drive<br>Centerville, VA 20120 | Robert Demarco<br>12770 Coit Road<br>Suite 850<br>Dallas, TX 75251 | United States Trustee<br>1100 Commerce Street<br>Room 976<br>Dallas, TX 75202 |
| Frisco ISD<br>c/o Linda D. Reece<br>Perdue, Brandon, Fielder,<br>Collins & Mott, L.L.P.<br>1919 S. Shiloh Rd., Suite 640,<br>LB 40<br>Garland, TX 75042 | LINEBARGER GOGGAN<br>BLAIR & SAMPSON, LLP<br>c/o John K. Turner<br>3500 Maple Avenue<br>Suite 800<br>DALLAS, TX 75219 | Eric C. Wood<br>BROWN FOX PLLC<br>6303 Cowboys Way, Suite 450<br>Frisco, Texas 75034 |
| Jessica L. Cousineau<br>McCreary, Veselka, Bragg &<br>Allen, P.C.<br>P. O. Box 1269<br>Round Rock, Texas 78680 | Jason S. Levin<br>Morris James LLP<br>3205 Avenue North Boulevard,<br>Suite 100<br>Wilmington, DE 19803 | CSC Global<br>c/o Jessica L. M. Woodward<br>251 Little Falls Drive<br>Wilmington, DE 19808 |

*/s/ Ian E. Roberts*
Ian E. Roberts